**E-filed 6/30/2009**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| HEAT SURGE, LLC; WORLD RESERVE MONETARY EXCHANGE, INC.; and UNIVERSAL SYNDICATIONS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BOB LEE, in his official capacity as District Attorney for Santa Cruz County, CA; and KELLY J. WALKER, in his official capacity as Assistant District Attorney for Santa Cruz County, CA,<br><br>Defendants. | Case Number C 09-572 JF (PVT)<br><br>ORDER[1] (1) DENYING MOTION TO DISMISS AND (2) STAYING ACTION PENDING RESOLUTION OF STATE COURT PROCEEDINGS<br><br>[re: docket no. 14] |

    The instant action for declaratory relief arises from an ongoing dispute over the legality of advertising for products marketed and sold by Plaintiffs Heat Surge, LLC ("Heat Surge"), World Reserve Monetary Exchange, Inc. ("WRME"), and Universal Syndications, Inc. ("UniSyn").[2] As set forth in the First Amended Complaint ("FAC"), which names as Defendants Santa Cruz County District Attorney Bob Lee ("Lee") and Assistant District Attorney Kelly Walker

---

[1] This disposition is not designated for publication in the official reports.

[2] The instant case is related to *California v. Universal Syndications, Inc., et al.*, No. C 09-1182, which has been remanded to Santa Cruz Superior Court.

("Walker") in their official capacities, Plaintiffs seek a judicial declaration that certain provisions of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, violate the First and Fourteenth Amendments to the Constitution as well as the dormant Commerce Clause of Article I, Section 8 of the Constitution. Plaintiffs also seek a judicial declaration that their commercial advertising has not violated the UCL, FAL, or § 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, and that Defendant Walker's conduct during settlement negotiations violated Rule 5-100(a) of the California Rules of Professional Conduct.

Defendants move to dismiss the instant action pursuant Fed. R. Civ. P 12(b)(1) and the jurisdictional standards enunciated in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). For the reasons set forth below, the motion to dismiss will be denied. However, the Court will stay the instant action pending resolution of the state court litigation.

**I. BACKGROUND**

Plaintiffs are Ohio corporate entities with a principal place of business in Canton, Ohio.[3] FAC ¶ 2. Since March 2007, Plaintiff WRME has advertised and sold to retail customers nationwide a numismatic product it calls the "Ballistic Roll." *Id*. ¶ 14. The Ballistic Roll consists of a set of fifty George Washington U.S. dollar coins, in mint and never-circulated condition, encased in a sealed cylinder that itself is housed within a display case. *Id*. WRME placed an advertisement for the Ballistic Roll in various national print publications, in which the Ballistic Roll was priced at $88.00, and upon purchase the buyer was promised a "free" U.S. dollar coin similar to those encased in the roll. *Id*. Neither the encasement or the roll of U.S. coins may be purchased separately. *See id.*

On or about November 7, 2007, Defendant Walker sent a letter to WRME seeking information to substantiate WRME's advertising claims concerning the Ballistic Roll. FAC ¶ 15.

---

[3] Prior to June 6, 2007 and December 10, 2007, respectively, Heat Surge and WRME operated as subdivisions of Plaintiff UniSyn, which placed advertisements on behalf of Heat Surge and WRME in print media throughout the United States. UniSyn is a wholly-owned subsidiary of Arthur Middleton Capital Holdings, Inc. ("AMCH"), an Ohio corporation. On the aforementioned dates, Heat Surge and WRME were incorporated separately as wholly-owned subsidiaries of AMCH. FAC ¶ 3.

In the following months, the parties exchanged correspondence and held meetings concerning WRME's advertisement of this product. *Id*. ¶¶ 16-24. Defendant Walker allegedly made broad allegations that the advertisements violated the UCL and FAL, and at one point allegedly threatened WRME with criminal liability under Cal. Bus. & Prof. Code § 17533.6, which prohibits advertising that may be construed as implying an endorsement or affiliation with any state or local government. *Id*. ¶¶ 22-22. In the complaint filed by the People of California in the Santa Cruz Superior Court, the advertising for the Ballistic Roll is alleged to constitute a violation of § 17537, which prohibits, *inter alia*, the use of the term "prize" or "gift" in a misleading manner. *Id*. ¶ 44.

Since approximately 2003, WRME has advertised and sold to retail customers a separate numismatic product it calls the "Presidential Display Chest." FAC ¶ 25. This product consists of a wooden display case designed to display a coin collection of up to fifty U.S. quarter coins. *Id*. The advertising circular stated that for a limited time the product may be purchased for a special price of $197.00, and that buyers would receive fifty U.S. quarters to populate the display case. *Id.* The quarters could be received only upon purchase of the case. *Id*. According to the operative complaint, only previous customers received this offer. *Id*. Beginning on or about June 18, 2008, defendant Walker and WRME began exchanging correspondence concerning whether the advertising for the Presidential Display Chest violated § 17537.11 of the UCL. *Id.* ¶¶ 26-29.

Since approximately 2007, Heat Surge has advertised and sold to retail customers nationwide a portable electric fireplace product called the "Roll-n-Glow Fireplace." FAC ¶ 31. The Roll-n-Glow consists of a wooden fireplace mantle and an electric heater incorporating a patented "fireless flame" technology. The advertisements stated that upon purchase of the mantle for $298.00, the buyer would receive the electric heater for free. *Id*. The advertisements also stated that the electric heater could be purchased separately for $249.00. *Id*. On February 7, 2008, Defendant Walker sent a letter to Heat Surge seeking information to substantiate Heat Surge's advertising of this product. *Id.* ¶ 32. Over the next several months, the parties exchanged correspondence and met in person to discuss whether Heat Surge's advertisements

3

violated the UCL. *Id*. ¶¶ 33-35. Plaintiffs alleged that during these discussions, Walker subpoenaed documents from one of Heat Surge's suppliers, and that Walker threatened Plaintiffs with criminal prosecution. *Id.* ¶¶ 33-35. Plaintiffs further allege that because there was absolutely no basis for criminal liability, Walker's threats were made in bad faith in an attempt to coerce a settlement in violation of Rule 5-100(a), which prohibits an attorney from making threats of "criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."[4] Plaintiffs seek to enjoin Walker from making such threats in the future. FAC ¶ 80.

Defendants contend that Plaintiffs did not respond to their requests for information with respect to sales of the aforementioned products in California. On February 4, 2009, Defendant Walker sent a letter to WRME's counsel reiterating the prior requests for information and stated that if he did not receive such information by February 9, 2009, the Santa Cruz County District Attorney's Office would file a complaint against WRME. *See* Heath Decl. Ex. A. On February 9, 2009, apparently without providing the requested information, Plaintiffs filed the instant action, alleging that Walker's investigation of Plaintiffs' business practices and threats of prosecution were biased and had an unconstitutional chilling effect on Plaintiffs' commercial speech. *See* FAC ¶ 43. The next day, Defendant Lee filed an action in state court on behalf of the People of California against WRME and other related parties, alleging that advertising associated with the Ballistic Roll violated the UCL, FAL, and FTC Act. WRME subsequently removed that action to this Court, where it was administratively related to the instant action. On June 16, 2009, the Court remanded that action to the Santa Cruz Superior Court.

On February 24, 2009, Defendants filed a motion to dismiss in the instant case pursuant to the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971) and the Court's discretionary power to decline jurisdiction pursuant to *Brillhart*. In response, Plaintiffs filed the FAC on March 18, 2009, adding the claims for relief with respect to the FTC Act and the alleged

---

[4] Plaintiffs also allege that in conversations concerning the investigation of their advertisements, Defendant Walker has stated that he wants "to break the company's business model" and that Defendant Lee has stated "we are going to get millions from these people." FAC ¶¶ 39-40. Plaintiffs also allege that Lee has made statements to the press that his office needs more money and prosecutors and that he worries about the County's budget difficulties. *Id*. ¶ 41.

4

ethical violation.

## II. LEGAL STANDARD

"In a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Before exercising jurisdiction, the district court must first determine if there is an actual case or controversy. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). If an actual case or controversy exists, then the district court shall use its discretionary power to determine whether the exercise of jurisdiction is proper. *Id*.

"Prudential guidance for retention of the district court's authority is found in *Brillhart*…and its progeny." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). The "primary" *Brillhart* factors have been articulated as follows: "A district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002) (citing *Dizol*, 133 F.3d at 1225). "Secondary" considerations may include:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted).

## III. DISCUSSION

A. *Brillhart* Analysis

With respect to the primary *Brillhart* factors, the Court concludes that the present circumstances favor abstention. The dispute between the parties is governed primarily by state law. While Plaintiffs' requests for declaratory relief are couched as claims for relief under 42 U.S.C. § 1983, a challenge to the constitutionality of the UCL and FAL could be presented as

5

affirmative defenses in the remanded state court action. *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 396-97 (5th Cir. 2003) (First Amendment and statutory preemption claims could have been raised as affirmative defenses in a state court action). The Court also concludes that an exercise of jurisdiction could encourage forum shopping, as any potential defendant in a civil (or criminal) law enforcement action involving issues of state law theoretically could file a preemptive declaratory judgment action asserting that the state law is unconstitutional in order to avoid litigation in state court. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir.1990) ("Forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules.").

Retention of the declaratory judgment action likely will result in duplicative litigation. Plaintiffs argue that the fact that Heat Surge is a named party only in the instant action and the assertion of a separate claim against Defendant Walker mean that this case is different because there are different parties, claims, and products at issue. However, the practical difference is slight. The dispute surrounding the legality of the advertising for Heat Surge's electric heater is essentially the same as controversy over the advertising for the Ballistic Roll and the Display Case. In addition, Heat Surge and the other Defendants are related corporate entities. The Ninth Circuit merely requires a "substantial similarity" between the state and federal proceedings, and "exact parallelism ... is not required." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). *See also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008) (fact that one case is "broader" than other litigation with respect to parties or claims "cannot be given undue weight because it is easily manipulated."). Moreover, the addition of a state law claim against Defendant Walker does not make this a different case. Otherwise, it would be easy for a declaratory judgment plaintiff to add miscellaneous claims in order to avoid dismissal. *See Micron*, 518 F.3d at 903.

The analysis pursuant to the secondary *Brillhart* factors leads to essentially the same conclusion. The first two factors are neutral, as either the state court action or the declaratory judgment action presents a viable mechanism for resolving the dispute between the parties. The

6

Case No. C 09-572 JF (PVT)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

third factor weighs slightly in favor of abstention, as the fact that Plaintiffs filed the instant action on the deadline imposed by Defendants suggests forum shopping in anticipation of suit. As a general rule, "federal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225. The fourth factor weighs strongly in favor of abstention, as parallel litigation of essentially the same issues between essentially the same parties likely will result in entanglement between the state and federal proceedings. *See Brillhart*, 316 U.S. at 495 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). Finally, the miscellaneous convenience factors are essentially neutral between this Court and the Santa Cruz Superior Court.

### B. Effect of Interjection of Federal Issues in Declaratory Action

In general, "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief." *Dizol*, 133 F.3d at 1225. However, a parallel state court proceeding "involving the same issues and parties pending at the time the federal declaratory action is filed" creates a presumption that the entire dispute should be heard in state court. *Id*. In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court reaffirmed the primacy of the *Brillhart* factors with respect to whether a district court should exercise its discretion to hear a federal declaratory judgment action when there is a parallel state proceeding involving the same issues and parties.[5] However, in *Wilton* the Supreme Court expressly declined to consider circumstances similar to that of the instant case, where arguably there are issues of both federal and state law. *See id*. at 290 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.").

---

[5] Plaintiffs make the argument that the more restrictive standard for discretionary deferral set forth in *Colorado River Conservation Dist. v. U.S.*, 424 U.S. 800 (1971) should apply because the FAC seeks relief pursuant to both the Declaratory Judgment Act and § 1983. *Colorado River* held that it was only under "exceptional circumstances" that a district court should abstain from exercising jurisdiction in light of a pending state court proceeding. *See id* at 817-818. However, *Colorado River* does not apply to cases brought under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (*Colorado River*'s "exceptional circumstances" test is inapplicable to declaratory judgment actions).

7

Plaintiffs seek to take advantage of this apparent loophole, asserting that the Court should retain the instant action because the federal law "provides the rule of decision" with respect to their constitutional claims. While no Ninth Circuit authority addresses this specific point, Plaintiffs cite *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996) as instructive. In *Youell*, which involved an insurance coverage dispute related to the *Exxon Valdez* oil spill, the Second Circuit held that abstention was inappropriate in light of the "brooding presence" of a "novel issue of federal admiralty law." *Id.* at 376 ("To resolve novel questions of federal law, however, is quintessentially [the] obligation [of the federal courts]."). *See also Sherwin-Williams*, 343 F.3d at 396 ("The facts of *Youell* raised novel issues of federal admiralty law.") In contrast, the constitutionality of the UCL does not present a "novel" question, either in terms of the general ability of a state court to determine the constitutionality of any state law or the UCL or FAL in particular. *See*, *e.g.*, *Manna v. Greenburgh No. 11 Sch. Dist.*, 2 F. Supp. 2d 461, 469 (S.D.N.Y. 1998) (existence of federal question because of constitutional challenge to state law is of limited import "because the state courts possess concurrent jurisdiction over the federal constitutional claims, [and thus] the source-of-law factor has less significance than it would if this Court had exclusive jurisdiction over the federal claims."); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) (addressing constitutionality of certain provisions of the UCL).

In addition, the declaratory relief sought does not transform the instant action into a case in which "federal law issues predominate" because Plaintiffs' legal claims could be raised as defenses in an affirmative case. *Sherwin-Williams*, 343 F.3d at 396-97. Instead, the pertinent inquiry here is whether the Court would have jurisdiction over a suit brought by Defendants to enforce their rights. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 20 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."). Such a hypothetical suit would be based upon diversity jurisdiction. However, in the related case previously before this Court, the motion to remand was granted because diversity jurisdiction *did*

8

Case No. C 09-572 JF (PVT)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

*not* exist. Accordingly, the jurisdictional basis for any of the claims asserted is tenuous at best. *See Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998) ("The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case."). Even assuming that there would be diversity jurisdiction, such a fact would have minimal relevance to what essentially is a state law dispute. *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) (where "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir.").[6]

Nor is Plaintiffs' assertion that their § 1983 claim is distinct from their constitutional challenges brought pursuant to the Declaratory Judgment Act particularly convincing. Each of the constitutional claims for relief alleges, *inter alia*, that "pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02, the Court should enter a declaratory judgment so holding [the applicable law unconstitutional] and preliminarily and permanently enjoin any and all enforcement of said statute on said grounds." *See, e.g.*, FAC ¶ 65. A California state court may exercise jurisdiction over claims brought pursuant to § 1983. *See, e.g.*, *Genesis Envtl. Servs. v. San Joaquin Valley Unified Air Pollution Control Dist.*, 113 Cal. App. 4th 597, 604 n.7 (2003) ("This jurisdiction is concurrent with the jurisdiction of federal courts.").

---

[6] Additional guidance was offered by the Supreme Court in *Public Service Commission v. Wycoff*, 344 U.S. 237, 248 (1952):
> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

In light of the above considerations, the Court finds that judicial efficiency and fairness would not be served by allowing this case to proceed in parallel with the litigation in the Santa Cruz Superior Court. *See Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."); *Principal Life Ins.*, 394 F.3d at 672 (court should balance the relative concerns of "judicial administration, comity, and fairness to the litigants."). However, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. Accordingly, the instant action will be stayed pending resolution of the state court litigation.[7]

---

[7] At oral argument, and in light of the remand of the related case to state court, Defendants argued that the Court should abstain from hearing the instant case pursuant to *Younger*, and that because Plaintiffs seek only injunctive relief, dismissal is appropriate, rather than a stay. *See San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998) ("*Younger* abstention requires dismissal of the federal claim for injunctive relief, not a stay."). Under *Younger*, a court should decline to exercise jurisdiction where there are (1) ongoing state judicial proceedings that (2) implicate important state interests; (3) the state proceedings provide an adequate opportunity to raise federal claims; and (4) if a ruling in the district court action would enjoin, or have the practical effect of enjoining, the ongoing state court proceedings. *AmerisourceBergen Corp. v. Roden ("ABC")*, 495 F.3d 1143, 1148-1149 (9th Cir. 2007). In the instant action, the first factor is satisfied, despite the fact that the state court action was filed the day after the filing of this case. *See M&A Gabaee v. Comty. Redevelopment Agency of City of Los Angeles*, 419 F.3d 1036, 1041 (9th Cir. 2005) ("*Younger* abstention applies even when the state action is not filed until after the federal action, as long as it is filed before proceedings of substance on the merits occur in federal court."). The second factor also is met, as the underlying state court action involves a state consumer protection statute. *See ABC*, 495 F.3d at 1150 ("The goal of *Younger* abstention is to avoid federal court interference with uniquely state interests such as preservation of these states' peculiar statutes, schemes, and procedures."). In addition, and as discussed previously, the Santa Cruz Superior Court provides an adequate forum for Plaintiffs to raise their federal claims. Finally, Plaintiffs seek an order that would "preliminarily and permanently enjoin any and all enforcement of [the UCL]," FAC ¶ 53. Such relief would have the effect of interfering with the pending state court proceedings. *See San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1095-96 (9th Cir. 2008) (request for permanent injunction against enforcement of state statute constitutes "interfere[nce]" under *Younger*). However, not all Plaintiffs are parties in the underlying state court action, and thus dismissal pursuant to *Younger* is not warranted at this time. *See, e.g., Blackwelder v. Safnauer*, 689 F. Supp. 106, 119

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is DENIED. The instant action is STAYED pending resolution of the related litigation in the Santa Cruz Superior Court.

DATED: June 30, 2009

_____
JEREMY FOGEL
United States District Judge

---

(N.D.N.Y. 1988), *aff'd on other grounds*, 866 F.2d 548 (2d Cir. 1989) ("As a general proposition, abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding; the doctrine does not bar non-parties from raising constitutional claims in federal court, even if the same claims are being addressed in a concurrent state proceeding involving similarly situated parties."). *See also ABC*, 495 F.3d at 1148, 1151 (in contrast to the "'carefully defined' boundaries" of *Younger* abstention, district courts have discretion to decline jurisdiction over declaratory relief actions).

This Order was served on the following persons:

Crystal Mothershead Gaudette     cgaudette@wsgr.com, llow@wsgr.com
Jason Michael Heath     Jason.Heath@co.santa-cruz.ca.us, csl026@co.santa-cruz.ca.us
Leo Patrick Cunningham     lcunningham@wsgr.com, lmontoya@wsgr.com